RIDER *vs.* ALEXANDER and KATHAN.

In an action of ejectment against landlord and tenant, an appearance, entered by attorney, for both defendants, is not conclusive against the landlord, but he will be permitted to prove, *by whose order or procurement,* the attorney entered such appearance,

And, even, if it appear that the attorney entered such appearance, *by the directions of the landlord,* yet this will not preclude the landlord from shewing that the judgment, rendered in the action against him, was obtained by collusion between the plaintiff and the tenant.

If the judgment recited in an execution, as the judgment on which it issued, purport to have been entered up at one term, *and the record produced to support* such execution, be of a judgment entered up at another term, such execution is irregular, and all the proceedings had under it are void.

If, in a trustee action, judgment be rendered, both against the principal debtor and the trustee, and one execu·ion issue on both judgments against the principal. debtor and the trustee, *such execution is irregular and void.*

If an action be commenced against a person, not residing within this State, and the plaintiff, without giving to the defendant personal notice of the suit, take judgment at the first term, such judgment is irregular and void.

THIS was an action of ejectment for a farm of land in Dummerston in the County of Windham. On trial to the jury, upon the general issue. the counsel for the plaintiff, stated, that, to support the plaintiff's right to recover in this action, they should first shew a title to the premises in Silas Taft, and then, a judgment in favor of the present plaintiff, Rider, against Silas Taft, recovered before the County Court, for the County of Windham, June term, 1810, for the sum of $291,83 cents, an execution upon that judgment ; and a levy of that execution upon the premises, as the property of Taft ; by which they were regularly set off to the plaintiff, and the legal title vested in him.

It was proved, that Taft took possession of the premises, in the year 1790, claiming the same in his own right ; and continued in the undisturbed possession of the premises, by himself and his tenant until the year 1810. Taft had removed from the state in the year 1810, having let the premises to a tenant, by the name of Belknap, who continued in possession, under Taft, until some time in the year 1810, when he delivered possession of the premises to Giles Alexander, one of the defendants.

Taft's title to the premises, being thus established by peaceable possession in his own right for more than fifteen years, the plain-

*Windham,*
August.
1814.

Rider
*vs*
Alexander
& Kathan.

tiff's council then produced copies of the record of a judgment, in favor of the present plaintiff, against Taft, of an execution issued thereon, and of the officers's return thereon endorsed.

It appeared, from the record, that Benjamin Rider, the present plaintiff, commenced his action before the County Court for the County of Windham, June term, 1807, against the said Silas Taft, as an absconding or concealed debtor, and summoned one Barnes, as Trustee of Taft. It appeared that judgment was rendered in that action against Taft, the absconding debtor at the first term, for $291, 38 cents ; and, after sundry continuances, at June term 1811, Barns, who had been summoned as trustee, was found to be Taft's trustee, and had monies in his hands belonging to Taft, to the amount of $49,38 cents. Barns' costs were taxed and allowed at $39,90 cents, which being deducted from the amount of Taft's money, found in his hands, left a balance of $9,48 cents to be applied on the judgment against Taft. The record concludes in these words, " that the plaintiff have his execution for the balance found due in the hands of said trustee, being $9,48 cents, as well as against the said Silas Taft, for his damages aforesaid and his costs, taxed, at the present term at $41,42 cents. Execution issued on the second day of October, 1810, reciting the judgment against Taft as recovered at June term, 1810 ; although the damages had been assessed, and the judgment entered up at June term, 1807. The execution also recited the judgment against Barns, the trustee, as having been rendered June term, 1810 ; and directed the officer to collect of Barnes, the trustee, the said sum of $9,48 cents. and to collect the residue of the said judgment of Taft, to be levied of his goods, chattles or estate. Which execution was by the constable of Dummerston, on the fourth day of October, 1810, levied, for the residue of the judgment against Taft, on the premises demanded, and the return made and recorded in the proper offices, as the law directs.

*William C. Bradley*, for the defendants, objected to the evidence offered by the plaintiff, on two grounds. First, for that the judgment recited in the execution, purports to have been rendered at June term, 1810 ; to support which a record is produced, of a judgment rendered at June term 1807. Secondly, for that the execution issued on two distinct judgments, one against Taft, the principal debtor, and one against Barnes the trustee.

The Court admitted the record, reserving the point; the parties consenting to a rule, that, if a verdict should be found for the plaintiff, and the Court should be of opinion that the record was properly admitted, the verdict to stand, but if of opinion that the record ought not to have been admitted, the verdict to be set aside and a non suit entered.

*Windham,*
*August.*
*1814.*

Rider
*vs,*
Alexander
& Katban.

*Bradley,* then stated as the defence in this action, that Giles Alexander, one of the defendants, had, at a Circuit Court of the United States, holden at Rutland, in, and for the district of Vermont, on the third day of October, 1808, recovered a judgment in an action of ejectment, in his favor against Silas Taft the landlord, and D. Belknap, the tenant, for the premises demanded in the present action. That he prayed out a writ of possession on that judgment, by virtue of which he obtained actual seisin and possession of the premises.

On production of the record in the action of ejectment, it appeared that the writ of ejectment was regularly served on Belknap, the tenant in possession, personally; that service of the writ was made, as to Taft, the landlord, by a copy left at his last and usual place of abode, in Dummerston: That the action was entered at May term of the Circuit Court, 1808, a general appearance was entered for the defendants, and the cause continued to the then next October term of said Court; at which term, judgment was entered by default, and a writ of possession thereon issued, which was never executed otherwise, than by Belknap's delivering the possession of the premises to Giles Alexander, the plaintiff in that ejectment; a minute of such delivery of possession being endorsed on the writ and signed by Belknap.

*Everet,* for the plaintiff, then stated, and offered to prove that the judgment in favor of Alexander against Taft and Belknap was obtained by collusion, between Alexander the plaintiff, and Belknap, Taft's tenant, in possession. That Taft, the landlord was not at the time a resident within this State, that he had no notice of the pendency of the action of ejectment; that, at the first term of the Court, Belknap had caused a general appearance to be entered for himself and Taft, the landlord, but wholly neglected to give any notice to Taft. And, that at the next term, judgment was rendered,

*Windham,*
August.
1814.

*Rider*
*vs.*
Alexander
& Kathan.

as on default, by collusion, between Belknap and Alexander. And insisted, that agreeably to the eighty eigth section of the judiciary act, no title, derived under such a judgment, could avail the defendant, in this action.

*Bradley,* for the defendants, contended that the evidence offered by the plaintiff, was inadmissible ; that the record was conclusive evidence of Taft's appearance, and could not be contradicted by parol ; that it fully negatived a want of notice, and, consequently, all collusion.

*By the Court.* The question submitted, is very important, but the Court think it very clear.—The eighty eighth section of the Judiciary act, which points out the mode of prosecuting actions of ejectment, among other things, provides, " That the action shall, in all cases be brought as well against the landlord, or landlords, if any there be, as against the tenant or tenants in possession of the premises demanded ; and, if any such action be otherwise brought, the same shall on motion be abated. And, the judgment rendered in such action shall, while remaining in force, be conclusive against the defendant or defendants, their heirs and assigns." And, as it was foreseen that great frauds might be practised by collusion between the plaintiff in ejectment, and the tenant in possession in the absence of the landlord, the following just and necessary provision was introduced. " And if the plaintiff or plaintiff's shall neglect to join the landlord or landlords in such action, or shall, by collusion with the tenant or tenants recover judgment against him, her, or them, for the seisin of any lands tenements or hereditaments, such landlord or landlords shall not be prejudiced thereby, but shall, in any trial thereafter to be had of his, her, or their right to such lands, tenements or hereditaments, against the person or persons, so recovering as aforesaid, or any one holding, or deriving claim from or under him, her or them, be taken and holden to have the prior possession." This is a remedial provision, and that against fraud : it is a case, in which the Court ought to give a liberal construction, and go to the utmost extent of legal rules in the examination. The judgment does not stand in the way, if collusion be proved ; and certainly an entry of an appearance of the landlord in the case cannot. Had there, indeed, been an entry, that the land-

lord personally appeared and confessed judgment against himself, for the demanded premises, it would have been conclusive. But, we know that an appearance, in almost every cause, in which an appearance is entered, is entered by an attorney, and that without actual warrant from the party, our law and practice not requiring such warrant. And we know also, that attornies may be, and often are imposed upon, and induced to enter an appearance without the knowledge of the party, for whom they appear. In a case like this, no attorney with us, would hesitate, at the request of the tenant, to enter an appearance, as well for the landlord, as for the tenant. To procure such entry might be the first act in the fraudulent drama. The question is not, whether it is admissible to prove that there was no appearance entered, to admit such proof would be to contradict the record ; but the question is, can proof be admitted to shew who procured the entry to be made, whether it was, or was not done, by the order or with the knowledge of the landlord, or of the tenant only, and such proof clearly is admissible. But were it not, and the record of the entry be considered as conclusive evidence of the landlord's actual appearance, at the first term, yet it would not be conclusive against all collusion ; but it would still be competent for him, to prove that the plaintiff in the action of ejectment, by colluding with the tenant procured the judgment to be entered by default. And not only the landlord but any other person holding under, or deriving title from him, may avail himself of the same proof. The evidence offered by the plaintiff is therefore admitted.

The plaintiff by Belknap, the tenant, fully proved the collusion, as before stated,

The defendant Alexander, then attempted to prove a prior title in himself, derived from another source, but failing to do so, a verdict was taken for the plaintiff, subject to the opinion of the Court, on the case reserved.

Afterwards the case reserved, coming on to be heard,

*Field*, for the plaintiff, contended, that the judgment and execution against Taft, were regular, and with the doings thereon sufficient to support the plaintiff's title in this action. That the judgment against Taft at June term, 1807, was but inchoate, and was not perfected until June term 1810, when the additional costs were tax-

*Windham,*
*August.*
*1814.*

*Rider*
*vs.*
*Alexander*
*& Kathan.*

Windham,
August.
1814.
Rider
vs.
Alexander
& Kathan.

ed, it was, therefore, well recited in the execution as of that term. That in every case, where money was found in the hands of the trustee, but not enough to satisfy the whole judgment against the principal debtor, it was regular, and was the constant practice in the County Court of that County, to issue, as in the present case, one execution only against the principal debtor and trustee, designating the sum to be collected of each. But when the disclosure was, of property subject to sale, it was the practice of the Court to issue, first, an execution against the property in the hands of the trustee, and, if on being sold, the property proved insufficient, then to issue an execution against the principal debtor for the balance; and he insisted that the practice was correct, and if not, that it was but an error, not an irregularity.

*Charles Marsh* and *Bradley,* for the defendants. The execution, as against Taft, is not merely erroneous, but irregular and void—it is wholly without foundation, having no judgment to support it: and it is necessary for the plaintiff, to support his title, in this case, to shew, not only, a regular execution, but a regular judgment, on which the execution issued. The execution purports to have issued on a judgment rendered, at June term 1810, but, there appears of record no such judgment, at that term. There does, indeed, appear a judgment, rendered at June term, 1807, between the same parties, and for the same sum, in damages, but for a different amount of costs; this cannot support an execution purporting to have issued on a judgment, at a different term—it may be considered a mistake, but it is a fatal mistake; every one takes judgment, and takes out process upon his judgment at his own risque.

But, on another ground, the execution is still more obviously irregular. The judgment against the principal debtor, and the judgment against the trustee, are two separate and distinct judgments; as much so as two judgments, in favor of the same plaintiff, but against two several defendants, in two several actions, and they can no more be joined in the same execution, in the one case than in the other. The mode pursued, in this case, is not only novel, but absurd, and were there no other objection against the plaintiff's title, this alone would be fatal.

The opinion of the Court was delivered by

Chipman, Ch. J. There appears to have been too little atten-

tion paid to the regular mode of proceeding, in the case of Rider, the present plaintiff against Taft and the trustee Barnes, in the County Court. The mode of proceeding, pointed out in the trustee act, is very plain : the statute provides, that unless it shall appear that personal notice has been given, both to the trustee and principal debtor, the cause shall be continued ; and before the plaintiff can obtain judgment against the principal debtor, notice must be given, in the same manner, as is provided in the fifty fifth section of the judiciary act.  If the person cited as trustee, has been served with personal notice, he is bound to appear at the first term, to be examined, or make a sufficient excuse for his not appearing in person.  If he shall appear at the first term, or at a subsequent term, to which the cause shall have been continued, he is to disclose, on oath, whether he have in his possession, any money, goods, chattels, rights or credits of the principal debtor, and to what amount. And, if it be found that such trustee had in his possession, at the time he was served with the process, money, goods, &c of the principal debtor, it is to be entered of record, and he is made liable therefor, to the amount of the judgment to be obtained against the principal debtor, if there be so much in his possession.  On such finding, the plaintiff may proceed to obtain judgment against the principal debtor, under the fitfy fifth section of the judiciary act, before mentioned ; but can have no further process against the trustee, until such judgment be obtained.  If no money, goods, &c. are found in the possession of the person cited as a trustee, he shall not be adjudged a trustee ; and, unless it shall appear, that the principal debtor shall have been personally served with notice of the process, or shall have actually appeared in the suit, no further proceedings shall be had upon the process.  If property be found in the possession of the trustee, no execution can issue against him, until judgment shall have been obtained against the principal debtor.  If the goods and chattels found in the possession of the trustee, are such as are liable to be sold on execution, the execution shall first issue against such goods and chattels, in the possession of the trustee ; and if the officer, having such execution shall return, that the trustee refused to expose such goods and chattels, or to pay the amount, the creditor may have a rule of Court on the trustee, to shew cause why the creditor should not have an execution against such trustee, his goods and estate ; and. no just cause being shewn,

*Windham,*
August.
1814.

Rider
*vs.*
Alexander
& Kathan.

35

*Windham,*
*August.*
*1814*

*Rider*
*vs.*
*Alexander*
*& Kathan.*

the creditor shall have execution accordingly. In all other cases, where the trustee is found to have in his hands money, of the principal debtor, or some debt or demand which he is holden to satisfy in money only, execution is to issue, in the first instance against the trustee his goods and estate. If there be sufficient found in the hands of the trustee, after deducting the costs, which shall be allowed him by the Court, to satisfy the judgment against the principal debtor, no execution is to issue against him, if not, execution is to issue against him for the balance. There are other provisions in the act, but I have recited all those which have any bearing on the case before the Court.

In this case, two objections have been made to the admission of the record, in support of the plaintiff's title.

1. That the execution through which the plaintiff attempts to derive his title, has no judgment to support it. The execution recites a judgment of June term, 1810 ; but the record is of a judgment, entered up, June term, 1807. The Court consider this an irregularity ; there is no record to support the execution, as issued. It cannot be admitted, that the taxation of additional costs, and the award of execution, at June term, 1810, which were incidents in the suit, had the effect to bring forward, and fix, as of that term, a judgment which had been fully made up and entered of record, at a former term. In a trustee suit, execution is sometimes necessarily awarded, at a term subsequent to that, at which the judgment was entered up against the principal debtor, but the execution must recite the judgment, as of the term when it was entered up.

The 2d objection is, that the execution includes two separate and distinct judgments, one against Taft, the principal debtor, and one against Barnes, the trustee. The Court think this is also a fatal irregularity, as is very apparent from the explanation which has been given of the proceedings under the trustee act. The judgment against the principal debtor, and the judgment against the trustee, are distinct and separate judgments, to all intents and purposes, and can no more be joined in the same writ of execution, than separate judgments in favor of the same plaintiff, against several defendants in different suits.

In examining the record we find another fatal irregularity, which has not been adverted to by the counsel on either side. It appears that the principal debtor had absconded, and did not reside in this

state, either at the time the suit was commenced, or at any time *Windham,* while it was pending in Court, that he had no personal notice of the August. 1814. suit, and that he did not appear ; yet, judgment was taken against *Rider* him, by default, at the first term of the Court, contrary to the ex- *vs.* press provisions of the statute. This renders the judgment, as per- *Alexander* fect a nullity, as though it had been rendered without any antece- *& Kathan.* dent process. It follows, that all the proceedings, had under that *judgment* are void, and that the plaintiff could not, thereby, acquire any title to the premises demanded. Let the verdict be set aside and a non suit entered.